IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs February 4, 2020

**STATE OF TENNESSEE v. JAMES BENNETT**

**Appeal from the Criminal Court for Shelby County
No. 18-00215, C1800590   J. Robert Carter, Jr., Judge**

_____

**No. W2019-00937-CCA-R3-CD**

_____

The Defendant, James Bennett, was convicted by a Shelby County Criminal Court jury of theft of property over $10,000, a Class C felony, and was sentenced to seven years in the Department of Correction. On appeal, the Defendant argues that the trial court erred in admitting evidence of his prior bad acts, and that the evidence is insufficient to sustain his conviction. After review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J. and CAMILLE R. MCMULLEN, J., joined.

Phyllis L. Aluko, District Public Defender; and Barry W. Kuhn (on appeal), and Robert Felkner (at trial), Assistant Public Defenders, for the appellant, James Bennett.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Matt McLeod, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

**State's Proof**

The Defendant and a codefendant, Angela Stagner, were indicted for theft of property valued between $10,000 and $60,000 for stealing a delivery box containing various items of designer clothing, jewelry, and a handbag from the victim, Suzana Lightman's, porch.

At trial, the victim testified that on October 24, 2016, she received an email notification that a package she was anticipating had been delivered, but the package was not on her doorstep when she got home. The package contained designer clothing and accessories from Celine, a high-end store in New York. She was receiving the items on consignment, meaning she was to pay for the items she wanted and return the rest. The invoice showed the value of the items contained in the shipment to be $21,143.53.

The victim called the police and also checked the surveillance footage from the cameras installed at her home. The footage showed a man taking a package from her porch, but she could not discern his facial characteristics because he was wearing a hooded sweatshirt.

The victim testified that she perused resale sites to see if she could find any of the stolen items listed for sale. On the "Letgo" website, the victim saw a handbag that appeared to be one of the items sent to her from Celine, and she had the sales representative confirm. It was listed at a "drastically reduced" price than its retail price. The victim said that she did not know the Defendant and that he did not have permission to take the package from her porch.

Sergeant Thomas Walters with the Memphis Police Department testified concerning his investigation of the case. Sergeant Walters found a Celine handbag on the "Letgo" website the day after the theft. The handbag's sales tag was visible in the pictures and the serial number matched the serial number listed on the victim's invoice. Sergeant Walters investigated the "Letgo" user account, coined "the man," that had posted the item for sale, and the phone number listed for that account was associated with the Defendant and Ms. Stagner.

Detective Jesus Perea with the Memphis Police Department executed a search warrant at 3413 Bowen Avenue in Memphis. When he arrived, an unidentified white male informed him that the Defendant and Ms. Stagner lived there, and Detective Perea saw mail addressed to both individuals inside the residence. Additionally, there were photographs of the Defendant and Ms. Stagner, men's clothing that appeared to be of the Defendant's size, and other items bearing the Defendant's name inside the home. In their search of the residence, officers found several Celine items, including a brown handbag, two pairs of trousers, a dress, a sweater, a jacket, and a pair of gold earrings in a box. On cross-examination, Detective Perea acknowledged that he did not determine who owned the house, in whose name the utilities were registered or, if there was a home phone, in whose name it was registered.

Detective Trace Rice with the Memphis Police Department took a statement from the Defendant. At first, the Defendant denied having any knowledge about the stolen items. However, as Detective Rice confronted the Defendant about the evidence against him, the Defendant eventually admitted that he knew about the items. The Defendant admitted that the "Letgo" account was registered to him. The Defendant told the police that an individual named "Callie" was responsible for the theft and that he did not learn about the theft until two days later. The Defendant admitted that he had committed three or four package thefts in the past but said that he had stopped committing them because he did not want to jeopardize his relationship with his son. Detective Rice said that the thief on the security footage did not look like the Defendant. However, the Defendant told the officer that the person on the security footage looked like "Callie." Officers were not able to locate "Callie."

**Defendant's Proof**

Angela Stagner testified that she had been friends with the Defendant for twenty years and had periods of romantic involvement during that time. Ms. Stagner recalled that a neighbor's cousin or friend brought a box of items to her house to see if she wanted to purchase anything. She did not know the man's name. The box contained trousers, sweaters, a dress, gold earrings, and a handbag. The man left the box and never came back for it. Ms. Stagner testified that she took photographs of the items and listed them for sale on an online resale site, but no one was interested. She also took the handbag and earrings to a local resale store and a pawnshop but was told the items were not real.

Ms. Stagner acknowledged that she originally told the police that the Defendant was involved with helping her try to sell the stolen items. However, she clarified that he was just present with her; "[She is] the smart one. He's just the muscle[.]" Ms. Stagner said that she was not able to provide the police with much information about the man who brought the items to her house. Ms. Stagner acknowledged that she pled guilty to theft in this case but claimed that she did so to protect her sentence of diversion in another case.

The Defendant testified that he did not steal the package from the victim's residence, that the brother of his neighbor, Callie, took it. He said that Callie and his brother brought a milk crate of "female stuff" to the house on Bowen where he was staying. The Defendant and Ms. Stagner got into an altercation in front of Callie and his brother, and the two men left the items and never came back for them.

The Defendant testified that he did not take photographs of the items or even know that the items had been advertised for sale online. He said that the "Letgo" account was on a phone that he had given Ms. Stagner. The Defendant stated that he gave a statement to

the police in which he told them about Callie's brother but also admitted to "some misdemeanor charges" to help Ms. Stagner.

Following the conclusion of the proof, the jury convicted the Defendant as charged.

## ANALYSIS

### I. Prior Bad Acts

The Defendant argues that the trial court erred in admitting evidence that he told the police that he had committed package thefts in the past.

At the beginning of trial, the Defendant made a motion seeking to exclude a portion of his statement to police in which he referred to being a sex offender and also admitted to committing prior thefts. The State agreed to redact the Defendant's mention of being a sex offender. However, with regard to the reference to prior thefts, the State asserted that "over the course of [the interview,] . . . his story changed multiple times, and . . . the State is not offering this for proof of prior crimes, but as a pattern of dishonesty and attempting to deceive the investigators about his role in this crime." The trial court reviewed the Defendant's statement and noted that the Defendant essentially alleged that "this was all a big mistake, and I didn't have anything to do with it." The court concluded, "For that limited reason, I think that it would be relevant if the jury wants to consider it in believing his assertion that he didn't have anything criminal to do with the offense for which he's charged." The court determined that evidence of the prior thefts was clear and convincing as it came from the Defendant's own admission, and that the danger of unfair prejudice did not outweigh the probative value of the evidence.

Tennessee Rule of Evidence 404(b) provides that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait." Such evidence may, however, be admitted for other purposes if the following conditions are met prior to admission of this type of proof:

(1) The court upon request must hold a hearing outside the jury's presence;

(2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence;

(3) The court must find proof of the other crime, wrong, or act to be clear and convincing; and

(4) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Tenn. R. Evid. 404(b). "Other purposes" have been defined to include the defendant's motive, intent, guilty knowledge, identity, absence of mistake or accident, a common scheme or plan, completion of the story, opportunity, and preparation. See State v. Berry, 141 S.W.3d 549, 582 (Tenn. 2004). If the trial court substantially complies with the procedural requirements, its decision will only be reversed if it "applie[d] an incorrect legal standard or its decision is illogical or unreasonable, is based on a clearly erroneous assessment of the evidence, or utilizes reasoning that results in an injustice to the complaining party." Wilson v. State, 367 S.W.3d 229, 235 (Tenn. 2012).

The Defendant argues that he never specifically asserted that the situation was an accident or a mistake, and that the State could not introduce evidence of other crimes unless he put forth accident or mistake as a defense. However, the trial court interpreted the Defendant's statement as essentially an assertion that "this was all a big mistake," that "he didn't have anything criminal to do with the offense[,]" and determined that the evidence was admissible for that non-propensity purpose. Given the Defendant's confusing and hard to believe depiction of the events in his statement, the trial court did not abuse its discretion in allowing this evidence which shows the Defendant knew what package thefts entailed.

In any event, any error in allowing the Defendant's admission to police in his statement that he had committed prior package thefts was harmless. The trial court gave the jury two instructions regarding the proper consideration of any evidence of prior crimes the Defendant might have committed. We presume that the jury followed the trial court's instructions. See State v. Young, 196 S.W.3d 85, 111 (Tenn. 2006). Additionally, the Defendant admitted in his own testimony at trial on direct examination that he told the police about committing prior thefts, although he claimed that he only told them because it would somehow convince the police to let Ms. Stagner go. The Defendant's contradictory and unbelievable testimony at trial did far more damage than the brief admission in his police statement. The Defendant is not entitled to relief on this issue.

## II. Sufficiency

The Defendant also argues that the evidence is insufficient to sustain his conviction. He asserts that the State did not prove that the victim was the owner of the stolen property, and that he was not directly involved in the receipt of and attempted sale of the stolen property.

In considering this issue, we apply the rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after

viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). The same standard applies whether the finding of guilt is predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

A criminal offense may be established entirely by circumstantial evidence. State v. Majors, 318 S.W.3d 850, 857 (Tenn. 2010). It is for the jury to determine the weight to be given the circumstantial evidence and the extent to which the circumstances are consistent with the guilt of the defendant and inconsistent with his innocence. State v. James, 315 S.W.3d 440, 456 (Tenn. 2010). In addition, the State does not have the duty to exclude every other reasonable hypothesis except that of the defendant's guilt in order to obtain a conviction based solely on circumstantial evidence. See State v. Dorantes, 331 S.W.3d 370, 380-81 (Tenn. 2011) (adopting the federal standard of review for cases in which the evidence is entirely circumstantial).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 405 S.W.2d 768, 771 (Tenn. 1966) (citing Carroll v. State, 370 S.W.2d 523, 527 (Tenn. 1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

"A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103(a). Theft of property valued at $10,000 or more but less than $60,000 is a Class C felony. Id. § 39-14-105(a)(4).

The Defendant asserts that it was not proven that the victim was the owner of the property. He alleges that the items were sent to the victim on consignment and that she never took control of the property or purchased an interest in it before it was taken from her doorstep. "Owner" is defined as "a person, other than the defendant, who has possession of or any interest other than a mortgage, deed of trust or security interest in property[.]" Tenn. Code Ann. § 39-11-106(a)(28). "[E]vidence of possession is ordinarily sufficient proof of ownership; and this is true although the one in possession may have held the property as bailee, trustee, or otherwise having only a special interest, and not a general ownership of the property." State v. Rafael A. Bush, No. M2002-02390-CCA-R3-CD, 2004 WL 794755, at *7 (Tenn. Crim. App. Apr. 14, 2004) (quoting Jones v. State, 59 S.W.2d 501, 501 (1933)), perm. app. denied (Tenn. Oct. 4, 2004). This court "has interpreted the definition of 'owner' within the meaning of the theft statute to extend to a variety of interests 'broader than its commonly understood meaning.'" State v. Darren Eugene Fleshman, Alias, No. E2013-00557-CCA-R3-CD, 2014 WL 2804183, at *5 (Tenn. Crim. App. June 18, 2014) (quoting State v. Joel Christian Parker, No. M2001-00773-CCA-R3-CD, 2002 WL 31852850, at *2 (Tenn. Crim. App. Dec. 18, 2002), perm. app. denied (Tenn. May 5, 2003)), perm. app. denied (Tenn. Nov. 21, 2014). Moreover, "an owner's possession of the property may be actual or constructive." State v. March, 293 S.W.3d 576, 592 (Tenn. Crim. App. 2008). In this case, the victim constructively possessed the package – it was addressed to her and left on the doorstep of her home; thus, the victim qualified as "owner" within the terms of the statute.

Relying on his own testimony at trial, the Defendant also asserts that it was Ms. Stagner who received the goods that had been stolen off the victim's porch and that he was not the one who posted the goods for sale online. However, the jury was presented with the Defendant's statement to police in which he said that Callie and his brother brought the items to him, not Ms. Stagner. The jury was also presented with evidence that the items were posted for sale under the Defendant's "Letgo" account, and contrary to her trial testimony, Ms. Stagner originally told the police that the Defendant participated in trying to sell the stolen goods. It was the prerogative of the jury to not accredit the Defendant's and Ms. Stagner's testimony at trial. Possession of recently stolen property, unless satisfactorily explained, creates a permissible inference that the defendant gained possession through theft or had knowledge that the property had been stolen. State v. James, 315 S.W.3d 440, 450 (Tenn. 2010). In the light most favorable to the State, the evidence is sufficient to sustain the Defendant's conviction.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE